**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**Joe Cox**
**Plaintiff, on behalf of himself and a class of
Similarly situated persons**

**vs.**                                                      **Case No.**  3:24-cv-00033

**ConsumerInfo.com, Inc., d/b/a Experian,**
**Experian Information Solutions, Inc., d/b/a Experian,**
**Defendants.**

**CLASS ACTION COMPLAINT**

INTRODUCTION

This case is about Defendants ConsumerInfo.com, Inc.'s, and Experian Information

Solutions, Inc.'s bait and switch campaign against consumers through the use of the term "free,"

which is used to lure consumers into providing so-called "written permission" to access their

credit reports. The Defendants use this ruse to sell information about consumers  to third parties

and force consumers into arbitration of unrelated disputes without a conspicuous disclosure of

these terms next to the term "free" as required by the FTC regulations on the use of the term

"Free."   Consumers who think they are signing up to receive their free credit reports, something

Experian is required by law to provide to consumers anyway and does on a different website, are

duped by the term "free" into having their information sold and being subjected to unsolicited

advertisements and other use of their private financial information by third parties.  Further, if

they want to object to it, Defendants tricked them into allegedly agreeing to arbitrate those

claims to prevent consumers from vindicating their consumer and privacy rights in court.

**PARTIES, JURISDICTION AND VENUE**

1.  Experian Information Solutions, Inc. (hereinafter "Experian") is a corporation with its

1

principal place of business in a state other than West Virginia and which does business in West Virginia.

2.  ConsumerInfo.com, Inc. is a wholly owned subsidiary of Experian and describes itself on its terms of use agreement as "The term "ECS" means ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services) and referred to as "Experian" on the Websites, its predecessors in interest, successors and assigns, affiliates (including, but not limited to, Experian Information Solutions, Inc.)…"

3.  ConsumerInfo.com, Inc. is an out-of-state corporation that does business in West Virginia.

4.  The Plaintiff, Joe Cox, is a resident of Putnam County, West Virginia.

5.  Venue is proper because the cause of action accrued in this district.

6.  This Court has jurisdiction over Defendant because it conducts business in West Virginia and commits torts in West Virginia, as described in this Complaint.

7.  Subject matter jurisdiction exists because Plaintiff has pled a federal claim. *See* 28 U.S.C. § 1331.

8.  Subject matter jurisdiction also exists under the Class Action Fairness Act because diversity exists between the Defendant and at least one class member, and the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. 1332(d)(2).

## FACTUAL BACKGROUND

9.  The Plaintiff is a consumer as defined in the Fair Credit Reporting Act.

10. The Plaintiff values having an accurate and up-to-date credit report.

11. The Fair and Accurate Credit Transactions Act (FACTA) requires credit bureaus, including the Defendant, to provide consumers with free annual credit disclosures,

2

colloquially referred to as credit reports, through the website

www.annualcreditreport.com.  Consumers can also call toll-free (877) 322-8228 or send a

letter requesting their free annual credit report Defendants at Annual Credit Report

Request Service, PO Box 105281, Atlanta, GA  30348.

12. Defendants recently announced a policy of allowing consumers to access their credit

reports weekly, as opposed to annually, through the annual credit report website that was

created pursuant to the FACT Act, by phone, or by mail service.

13. The Plaintiff, interested in checking on his credit report, put the search term, "free credit

report" in the Google search engine.

14. Appearing on the page was an advertisement from Defendant Experian, which is a

corporation the Plaintiff was previously aware of and knew provided credit reports to

creditors with whom the Plaintiff has done business with in the past.

15. In the Google search, Plaintiff spotted a website called "freecreditreport.com," which he

clicked on.

16. Upon clicking the link, Plaintiff was directed to www.freecreditreport.com which looks

like this:



Credit Cards    Sign In    Sign Up For Free

Your **Experian Credit Report** and **FICO® Score**\* are completely free.

No credit card required. Your free report and score are updated every 30 days on sign in.

Get your Free Credit Report and FICO® Score

\*Credit score calculated based on FICO® Score 8 model. Your lender or insurer may use a different FICO® Score than FICO® Score 8, or another type of credit score altogether. Learn more



# Why get your Free Experian Credit Report?

### Gain credit insights
View the same type of information that lenders see when requesting your credit. See who's accessing your data and get tips on how to improve your financial health.

### View your score factors
Your credit score is calculated from the information found in your credit report. See the positive and negative factors that impact your FICO® Score.

### Raise your credit scores instantly
Get credit for your phone and utility bills by adding positive payments to your Experian credit file.





4

Average users who received a boost improved their FICO® Score 8 based on Experian Data by 12 points. Some may not see improved scores or approval odds. Not all lenders use credit information impacted by Experian BoostTM.



# Find New Credit Options

Want a lower rate on a credit card? Maybe you're looking for a personal or debt consolidation loan. Either way, our Offers Marketplace has many attractive offers to choose from.

**View Credit Offers ›**



## Quick and Easy Sign Up

No credit card needed, just sign up to get instant online access to your free Experian credit report and FICO® Score.

| No Credit Card Required | Free Experian Credit Report and FICO® Score | Updates Every 30 Days on Sign In | Dispute online for free |

**Sign Up Now for Free**

Get the Free Experian app:





17. The page advertised that freecreditreport.com was a "part of Experian."

18. Plaintiff had heard of Experian from past credit applications and was interested in receiving a free credit report, so he clicked the link labeled "Get Your Free Credit Report and Fico Score."

19. After clicking the "let's get started" link, Plaintiff was directed to a page[1] that looked like the following:

---

[1] Available at https://usa.experian.com/registration/getStarted?offer=at_frsas119&authType=102&br=exp&op=FRSP-HMP-PRI-119-TA1-HMPDNUT-B1-EXP-VWIN-SEO-XXXXXX-XXXXXX-PHAS2&dAuth=true&_gl=1*igyelh*_gcl_au*MTg0ODQ1OTUxNi4xNjk4Njc1ODM0*_ga*Mjk0ODIwNzI3LjE2OTg2NzU4MzQ.*_ga_22YNWJN8Z2*MTY5ODY5NTMzNC4yLjEuMTY5ODY5NTcxMC4zNS4wLjA.*_ga_7EN8BHB8L8*MTY5ODY5NTMzNC4yLjEuMTY5ODY5NTcxMC4zNS4wLjA.



20. This webpage is the first page that discloses a possible terms of use agreement.

21. The only option to obtain a credit report on the Experian website included having to agree to terms of service with Experian.

22. At no point on this Experian-owned website was the Plaintiff referred to www.annualcreditreport.com to obtain a free credit report.

23. Beginning after 2004, every consumer now had the right to request and receive their own free credit report by law.  15 U.S.C. §1681j(a); Pub.L. 108–159, 117 Stat. 1952.

24. The national CRAs – Equifax, TransUnion and Experian – were required to create a website by which consumers could request their free credit report.

25. The CRAs used the domain www.AnnualCreditReport.com for the free annual credit

reports required by 15 U.S.C. §1681j(a); Pub.L. 108–159, 117 Stat. 1952.

26. However, shortly after this commencement, Experian's parent began operating and marketing a parallel, alternative website, www.FreeCreditReport.com, the original version of CreditWorks, by ConsumerInfo.com, Inc.. It marketed it in a way that distracted from the actual free credit report site mandated by the statute and found a way to charge consumers for this "free" product.  https://www.ftc.gov/legal-library/browse/cases-proceedings/022-3263-consumerinfocom-inc-dba-experian-consumer-direct-qspace-inc-iplace-inc.  ("Consumerinfo.com, Inc., doing business as Experian Consumer Direct, has settled Federal Trade Commission charges that it deceptively marketed "free credit reports" by not adequately disclosing that consumers automatically would be signed up for a credit report monitoring service…")

27. Then, after the Federal Trade Commission brought an enforcement action against Experian, Defendant retooled its "free credit report" model.

28. In 2017, the CFPB brought another enforcement action, and again, the Defendant had to submit to another consent order and pay restitution. https://files.consumerfinance.gov/f/documents/201703_cfpb_Experian-Holdings-Inc-consent-order.pdf. ("Experian advertised Experian Credit-Related Products on AnnualCreditReport.com before consumers 'obtained' their annual credit disclosures. When consumers sought to order their free file disclosures from Experian, consumer were taken to a webpage that displayed a summary of their credit report and that included Experian's advertisements.")

29. Despite the availability of the free credit disclosure under FACTA, Defendants do not provide any information related to the annual credit report's free report service on their

freecreditreport.com landing page.

30. Defendants do not require consumers to scroll through the Terms of Use Agreement prior to advancing in the service.

31. Defendants do not require consumers to check a box that indicates the consumer has read the Terms of Use Agreement.

32. Instead, Defendants seek to bind consumers to the Terms of Use Agreement before even ensuring that the consumer has access to the Terms of Use Agreement.

33. The Terms of Use Agreement includes numerous one-sided termsthat benefit only Experian, including, but not limited to:

    a.  Agreeing to allow Defendants to keep copies of all credit information for Plaintiff.

    b.  Agreeing to allow Defendants to provide Plaintiff's private credit information to third parties so that they can market products and services to Plaintiff.

    c.  A statement that the terms of agreement for this allegedly free service may be "updated from time to time" and that "You should check this website regularly for updates to this Agreement."

    d.  An agreement to arbitrate any and all claims against Experian in the American Arbitration Association (AAA), including all claims resulting from incorrect credit reporting on Plaintiff's Experian credit report.

    e.  A bar on bringing class actions against Experian or functioning in the capacity of a class representative in cases against Experian.

    f.  Waiver of the constitutional right a trial by jury.

    g.  Limitations on how mass arbitrations can be conducted against Experian.

     h.   Limiting Plaintiff to obtaining a new credit report every thirty days, which is less than the weekly credit report provided without any contractual restrictions on annual credit report.

     i.   Waiver of the UCC warranties of fitness for particular purpose and warranty of merchantability for the reports provided by Experian.

     j.   Waiver of any direct, indirect, incidental, special, consequential, or exemplary damages from mistakes on the credit reporting from Defendant.

34. Further, there is an entire section of the "Terms of Use Agreement" which give Experian permission to access consumers financial information and sell it to third parties for profit:

> You understand and agree that **ECS, and its service providers, may, from time to time, provide products, services, features and/or functionality to you, and that they shall be offered pursuant to the same authorization that you provided to ECS for ECS to obtain your credit report and/or credit score(s) on a recurring basis to provide them to you to review while you have an account with ECS.**

> You further understand and agree that, by establishing an account with ECS, or submitting your order or enrolling for any Service, **you have provided "written instructions" in accordance with the FCRA for ECS and its service providers, to obtain and use the information you have provided, and your credit report and/or credit score(s) to notify you of credit opportunities and other products and services that may be available to you through ECS or through unaffiliated third parties** (as explained in the section below entitled "General Description of Services"). In addition, you further understand and agree that, if you request certain credit or loan offers as part of any Service, such as prequalified personal loan offers, **you are authorizing ECS and its service providers to send your information to lending partners on your behalf, and have provided "written instructions" in accordance with the FCRA to such credit and lending partners to obtain information from your personal credit profile** or other information from one or more consumer reporting agencies, such as TransUnion, Experian or Equifax, to prequalify you for credit or loan options, offers or other credit opportunities, including prequalified personal loan offers, to

share such credit opportunities with ECS, or to use such information to assist you in completing a credit or loan application.

**You understand and agree that ECS receives compensation for the marketing of credit opportunities or other products or services available through third parties**, and that this compensation may impact how and where such credit opportunities, products or services appear on a Website (including, for example, the order in which they appear). You further understand and agree that many but not all credit opportunities available through third parties, such as prequalified credit and personal loan offers, may be made available to you in a Service, and such Service will not include all credit opportunities available through third parties. Please note that prequalification for a credit opportunity available through a third party does not guarantee approval, and you will need to submit an application with such third party if you choose to apply for a prequalified offer (and such application may result in a credit inquiry that can impact your credit score(s)). (emphasis added)

35. Defendants are not entitled to access a consumer's information without a permissible purpose.  15 U.S.C. 1681b.

36. Defendants do not include any warning to consumers that the consumers are agreeing and consenting to allowing Experian to market and sell their personal information to third parties.

37. Defendants do not include any warning to consumers that the consumers are agreeing and consenting to third party "credit and lending partners" to access their personal information.

38. Consumer rights, such as the right to litigate violations of federal law in court, including as a class, are things of value that belong to the consumer.

39. Consumer information and data are also valuable commodities that belong to the consumer.

40. Instead, Defendants claim that the consumer provides permission based upon a clause in

a hyperlinked incorporated terms.

41. The consumer does not see these terms because not only are they not pointed to them, but also because they are buried inside a contract of adhesion, in fine print, hyperlinked on a completely separate page.

42. The Federal Trade Commission has issued guidance that this type of "written permission" is insufficient to confer access to a consumer's credit report:

"However, the consumer's signature on a form that includes the statement 'I understand that where appropriate, credit bureau reports may be obtained' is not a sufficiently specific instruction from the consumer to authorize a CRA to provide a consumer report. This language is more in the nature of a notification that a consumer report might be procured, as opposed to a grant of permission to obtain the consumer report. FTC Staff Summary § 604(a)(2) item 1 (2011), accessed https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf at page 43.

43. Experian does not obtain specific instruction from consumers to authorize transmission of credit reports based on this fine print.

44. Rather than providing a purely "free" product, Experian relies on the extraction of valuable waivers and consumer data and is profiting from consumer's information by marketing the consumer's data to third parties.

45. There does not appear to be any simple way to print out the terms of service to make them more readable.

46. The term "free" has special meaning in commerce and has been defined by the Federal Trade Commission (FTC) in 16 CFR § 251.1 The guide.

47. 16 CFR § 251.1 provides that:

**(a) *General.***

**(1)** The offer of "Free" merchandise or service is a promotional device frequently used to attract customers. Providing such merchandise or service with the

purchase of some other article or service has often been found to be a useful and valuable marketing tool.

(**2**) Because the purchasing public continually searches for the best buy, and regards the offer of "Free" merchandise or service to be a special bargain, **all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived**. Representative of the language frequently used in such offers are "Free", "Buy 1-Get 1 Free", "2-for-1 Sale", "50% off with purchase of Two", "1¢ Sale", etc. (Related representations that raise many of the same questions include "____ Cents-Off", "Half-Price Sale", "1/2 Off", etc. See the Commission's "Fair Packaging and Labeling Regulation Regarding 'Cents-Off' and Guides Against Deceptive Pricing.")

(emphasis added).

48. The FTC guide further defines the term "Free" in the marketplace as:

(**b**) *Meaning of "Free".*

(**1**) The public understands that, except in the case of introductory offers in connection with the sale of a product or service (See paragraph (f) of this section), an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free". In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, the word "Free" indicates that he is paying nothing for that article and no more than the regular price for the other. **Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the substitution of inferior merchandise or service, or otherwise.**

(emphasis added).

49. As a result of the special importance of the term "free" in the marketplace, the FTC places a few restrictions on its usage. The first of which is a disclosure requirement:

(**c**) *Disclosure of conditions.* **When making "Free" or similar offers all the terms, conditions and obligations upon which receipt and retention of the "Free" item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.** Stated differently, all of the terms,

conditions and obligations should appear in close conjunction with the offer of "Free" merchandise or service**. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outse**t…

(emphasis added).

50. The FTC places one further limitation on the use of the word "Free" in advertising,

explicitly limiting its usage to no more than six months in a twelve-month period:

**(h) Frequency of offers**. **So that a "Free" offer will be special and meaningful, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for more than 6 months in any 12-month period.** At least 30 days should elapse before another such offer is promoted in the same trade area. No more than three such offers should be made in the same area in any 12-month period. In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed 50 percent of the total volume of his sales of the product, in the same size, in the area.

(emphasis added).

51. Plaintiff was entitled to rely on the FTC regulations governing the use of the term "free"

in 16 CFR § 251.1.

52. Under 16 C.F.R. § 251.1, Plaintiff was under no obligation to search for additional terms,

obligations, or conditions that were not placed conspicuously near the first advertisement

for Defendants' allegedly "Free" credit report service.

53. Upon information and belief, Defendants have been offering their "Free" credit service

for a period greater than six months.

54. The Defendants do not make the terms and conditions of their "Free" offer readily

available in close conjunction with the offer; instead, a user must click through three

levels of links to reach a "Terms of Agreement."

55. Placing a Terms of Agreement link near the second link for the offer does not make it a

"disclosure at the outset" as envisioned by 16 CFR § 251.1 (c).

56. At no point on the above webpage are any of the material terms contained in the "terms of agreement" disclosed, including the agreement to access the consumer's credit disclosure, the agreement to allow third parties to access the consumer's credit disclosure, to delegate whether a claim is arbitrable to an arbitrator, to arbitrate claims, the jury trial prohibition, the limitations on liability, or the class action prohibition.

57. If an agreement to arbitrate is a term sufficient to form a contract, then it is also a material term that should be disclosed conspicuously at the outset of the alleged "free" offer.

58. Two courts in this District have found that an agreement to arbitrate a claim is sufficient to form a contract.  See Clark v. Am. Mem'l Life Ins. Co., No. 2:21-CV-00399, 2021 WL 5235993, at *3 (S.D.W. Va. Nov. 10, 2021); Chambers v. Hampden Coal, LLC, No. 2:17-CV-2744, 2018 WL 1129370, at *2 (S.D.W. Va. Mar. 1, 2018).

59. In this case, the agreements to arbitrate, the waiver of liability, the agreement to sell personal information, the agreement to allow third parties to access personal information, and the agreement to forgo class actions were not conspicuously disclosed anywhere on freecreditreport.com.

60. Upon information and belief, Defendants have compelled numerous consumers all over the country to arbitration for disputing errors on the Experian credit report as a result of them having signed up for this supposedly "free" service.

61. Experian operates several other internet domains with equally misleading usage of the term "Free."

62. Upon information and belief, the Defendants are using the term "Free" to dupe

consumers into signing up for liability waivers, arbitration clauses, class action bans, and other losses of rights to protect itself against claims regarding credit reports that the Defendants also makes and profits from the sale and usage of.

63. For many years, Experian has had a difficult time complying with the FCRA's maximum possible accuracy requirements.  *See e.g. Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *6–7 (E.D. Va. Mar. 18, 2011) ("Given the purpose for which a reinvestigation was required, a fact finder could conclude that Experian had failed to conduct a reasonable investigation "to assure maximum possible accuracy" in Burke's credit report."); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008) ("When conducting a reinvestigation pursuant to 15 U.S.C. § 1681i, a credit reporting agency must exercise reasonable diligence[.] … On our own motion, therefore, we grant summary judgment to Dennis on his claim that Experian negligently failed to conduct a reasonable reinvestigation in violation of section 1681i."); *Reyes v. Experian Info. Sols., Inc.*, 773 F. App'x 882, 885 (9th Cir. 2019) ("We reverse the grant of summary judgment in Experian's favor [and] vacate the district court's orders denying Reyes's motions for partial summary judgment and class certification[.]")

64.       Since December 1, 2011 when the Consumer Financial Protection Bureau ("CFPB") started tracking, Experian has been the subject of 551,281 consumer complaints.

65. With Experian's history of difficulty in complying with the FCRA, it is strange that Experian would forego opportunities to demonstrate that its systems and programs are transparent rather than deceptive.  See *Austin v. Equifax Information Services, et al*, 3:22-cv-00707, Order Denying Motion to Compel Arbitration entered 12/14/2023, E.D.Va.

66. The Plaintiff wasted time and energy looking at Defendants' false advertisements of "Free" services when he could have gone to a competitor who offered better service at a price and would not have so many hidden terms and conditions.

67. The Plaintiff then signed up for the allegedly free service.

68. Upon information and belief, the Defendants thereafter began harvesting and selling Plaintiff's credit information to third-party vendors.

69. Further, Plaintiff could have obtained his credit report for free from www.annualcreditreport.com.

70. It is impossible for a product or service to be "Free" when a prerequisite for subscription to such a product or service requires that the user be saddled with terms that include a requirement to waive the constitutional right to go to court, limit class action rights, and limit liability.

71. In order to obtain the supposedly "Free" services offered by Experian, a subscriber must be willing to waive constitutional protections of due process, limit class action rights, and limit liability.

72. The Defendants are duping consumers into providing "written permission" to access their credit report and sell consumer's private consumer information to third-parties, by enticing them into an allegedly free service and failing to disclose all of the relevant terms and conditions directly next to the term free as required by the FTC rules.

73. It is not "written permission" to pull a consumer's private credit information where the "written permission" is contained in a terms of service link that the consumer is not required to read in order to accept the allegedly free service.

74. Defendants did not have written permission to pull the consumer's credit reports.

17

75. The FTC requires all material terms to be displayed conspicuously next to the use of the word "free."

76. There was no disclosure next to the word free that the consumer's private financial information would be used for advertising purposes or sold to third parties.

77. There was no disclosure next to the word free that the consumer was signing up for arbitration with Experian.

78. Therefore, there was no meeting of the minds between the consumer and Experian on the terms, including the arbitration clause or the alleged "agreement" with Experian to harvest and sell the consumer's private financial information.

79. Upon information and belief, Plaintiff and all those similarly situated's private financial information was harvested by Experian and sold to third parties.

80. As a result of the Defendants'Defendants' false advertising, the Plaintiff was annoyed, inconvenienced, caused to suffer consternation, wasted time, lost valuable capped internet time, and otherwise suffered damages from the Defendants'Defendants' advertisement.

## CLASS DEFINITION

81. Plaintiff, serving as class representative, tentatively defines the **Class,** as follows:

All consumers residing in the United States and its territories who (1) responded to Experian's internet advertisement for a free credit report by enrolling in freecreditreport.com, (2) in the five years prior to the filing of the Complaint

82. Plaintiff reserves the right to refine the class definitions in light of discovery and additional investigation.

83. The putative class is so numerous that joinder of all members is impractical. Upon information and belief, the number of consumers who enrolled in freecreditreport.com numbers in the thousands. Defendants operate one of the largest national consumer-reporting agencies. The names and addresses of the class members are identifiable through documents maintained by Defendants and the class members may be notified of the pendency of this action by published and/or mailed notice.

84. There are questions of law and fact common to the putative class, which predominate over any questions affecting only individual class members including whether the Defendants had a permissible purpose to access the Plaintiff's consumer report, gather and sell personal and consumer data, For example, and without limitation, the focus of the litigation will be: (a.) whether Defendants obtained written permission; (b.) complied with the FTC's requirements for offering "free" credit reports; (c.) whether Defendants'Defendants' conduct constituted a violation of the FCRA; (d.) whether Defendants acted willfully in their design and implementation of their "free" credit report scheme; (e.) whether the forced arbitration clause is enforceable; and (e.) the appropriate amount of statutory and/or punitive damages for such violations.

85. The principal common issues involve whether Defendants' conduct regarding the aforementioned attempt to create written authorization to access consumer disclosures constitutes a violation of the FCRA.

86. One or more of Plaintiff's additional claims are typical of those of the putative class and based on the same legal and factual theories. Defendants use common practices and automated systems in committing the conduct that Plaintiff alleges injured him and the Class. Defendants developed a mechanism to appeal to consumer desire to obtain a free

credit report, that they knew they could use to induce them into giving up valuable consumer information and rights and use to Defendants'Defendants' advantage and monetary benefit. The violations alleged by the Plaintiff are the same as the violations against the class. The success of the class claims will depend entirely based upon whether Plaintiff's claims succeeds  Plaintiff is a member of the class. Plaintiff will fairly and adequately protect the interests of the class. He has suffered injuries as a result of Defendants'Defendants' actions and will, accordingly, vigorously litigate this matter. Plaintiff is greatly annoyed at being the victim of Defendants'Defendants' illegal and fraudulent conduct and wishes to see that wrong remedied. To that end, Plaintiff has retained counsel experienced in claims involving Experian's unfair business practices, FCRA violations, and class actions.

87. The Plaintiff's injuries are the same injuries as suffered by the class.

88. Plaintiff has suffered individual privacy, financial, emotional, and mental injuries, he has decided to forego his individual recovery in order to represent the class and seek classwide damages on their behalf.

89. Neither the Plaintiff nor his counsel have any interest that might prevent them from vigorously pursuing these claims.

90. A class action is a superior method for the fair and efficient adjudication of these particular claims and controversies.

91. The interest of putative class members in individually controlling and maintaining the prosecution of separate claims against Defendants is small, given the fact that they are unlikely to be aware of their legal rights and the amount of statutory or actual damages in an individual action is relatively small.

92. The management of the class claims is likely to present significantly fewer difficulties than those presented in many larger and more complex class actions

93. As a proximate and/or foreseeable result of Defendants'Defendants' wrongful conduct, each member of the putative class has suffered actual and/or statutory damages. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants'Defendants' conduct.  It would be virtually impossible for the members of the Class or Subclass individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants'Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

94. Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

## COUNT I

### *UNJUST ENRICHMENT* (CLASS CLAIM)

95. The Plaintiff and all others similarly situated incorporate the previous paragraphs as if fully set forth herein.

96. The Defendants did obtain Plaintiff's confidential credit and financial information

through their website.

97. Defendants failed to follow FTC regulations on the use of the term "free" in advertisements and as a result obtained Plaintiff's confidential consumer information and,without Plaintiff's knowledge or permission, sold it to vendors and financial companies.

98. Plaintiff was entitled to rely on the FTC regulations governing the use of the term "free" in 16 CFR § 251.1, and was under no obligation to search for additional terms, obligations, or conditions that were not placed conspicuously near the first advertisement for Defendants' allegedly "Free" credit report service.

99. Defendants'Defendants' "Free" offer of a credit service violated 16 CFR § 251.1 (c) when they failed to make the disclosure of the additional terms of conditions clear and conspicuous at the outset of the offer.

100.    Defendants'Defendants' "Free" offer of a credit service violated 16 CFR § 251.1 (c) when it placed its "Terms of Agreement" behind a link three clicks into the website.

101.    Defendants'Defendants' "Free" offer of a credit service violated 16 CFR § 251.1 (c) when they failed to provide the terms and conditions of their alleged "Free" service at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.

102.    Defendants' "Free" offer of a credit service violated 16 CFR § 251.1 (h) when they continued to offer the allegedly "Free" service past six months.

103.    As a result, Plaintiff sufferedharm byhaving his private information transmitted and exposed to third parties without his knowledge.

104.    Further,  Defendants were unjustly enriched by obtaining and profiting  from the

sale of Plaintiff's private information to third parties.

105.  As a result of the Defendants' actions, Plaintiff and all others similarly situated have been dispossessed of their valuable consumer rights, personal information, and annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, caused to utilize limited internet resources and time on a deceptive advertisement, had their personal information sold without their knowledge and consent, and otherwise was caused indignation and distress.

### COUNT II

### *VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (CLASS CLAIM)*

106.  The Plaintiff and all others similarly situated incorporate the previous paragraphs as if fully set forth herein.

107.  Plaintiff was entitled to rely on the FTC regulations governing the use of the term "free" in 16 CFR § 251.1, and was under no obligation to search for additional terms, obligations, or conditions that were not placed conspicuously near the first advertisement for Defendants' allegedly "Free" credit report service, including any term that allegedly gave Defendants written instructions as defined by 15 U.S.C. § 1681b.

108.  15 U.S.C. § 1681b, in part, requires that a user have written instruction from a consumer before obtaining a consumer disclosure.

109.  15 USCS § 1681q makes it illegal for anyone to knowingly and willfully obtain information on a consumer from a consumer reporting agency under false pretenses.

110.  Defendant ConsumerInfo.com, Inc. did obtain Plaintiff's information from a consumer reporting agency under the false pretense of offering free access to the consumer's credit report and score.

111.   Defendant Experian set up a scheme designed to circumvent consumer protections by knowingly provided to ConsumerInfo.com, Inc. Plaintiff's confidential financial information in the form of a credit report for ConsumerInfo.com, Inc.'s and Experian's use and profit, knowing that it had created a signup process that violated 16 CFR § 251.1 and improperly obtained "written instructions."

112.   The Plaintiff and the class are entitled to statutory and punitive damages for Defendants' willful violations. 15 U.S.C. §1681n.  In the alternative, the Plaintiff and the class are entitled to recover actual damages for Defendants' negligent violations. 15 U.S.C. § 1681o.

## COUNT III

### *UNCONSCIONABLE CONTRACT (CLASS CLAIM)*

113.      The Plaintiff and all others similarly situated incorporate the previous paragraphs as if fully set forth herein.

114.   Plaintiff and Defendants occupy dramatically unequal bargaining positions, including that:

a.Plaintiff is an unsophisticated consumer.

b.Defendant Experian is a large corporation that regularly solicits customers via national advertising campaigns to obtain and disseminate consumer information.

115.   The permissible purpose and arbitration contract were formed without a true meeting of the minds, caused by circumstances including:

a.Defendants misrepresented that Plaintiff was obtaining a "free" credit report;

b.Defendants misrepresented that Plaintiff was obtaining a "free" credit score;

c.Defendants failed to clearly disclose material terms and conditions on the same webpage required to obtain the allegedly "free" credit report;

d. Defendants did not disclose that a truly free credit report was available in another website that did not require the Plaintiff to enter into onerous contract terms such as granting access to personal information and waiving constitutional rights;

e. luring consumers to sister company websites for the purpose of allegedly receiving a free credit report to obtain rights over the consumer;

f. not ensuring that the consumer saw all relevant terms by requiring a scroll box or to scroll through the terms before clicking to obtain the "free" credit report and score; see *Sqouros v. TransUnion Corp.*, 817 F.3d 1029, 1032-1036 (7th Cir. 2016);

g. using the term "free" in violation of FTC rules regarding its use.

116. Under the specific circumstances alleged, the contract contains substantively unconscionable and commercially unreasonable terms, including:

a. Agreeing to allow Defendants to keep copies of all credit information for Plaintiff.

b. Agreeing to allow Defendants to provide Plaintiff's private credit information to third parties so that they can market products and services to Plaintiff.

c. A statement that the terms of agreement for this allegedly free service may be "updated from time to time" and that "You should check this website regularly for updates to this Agreement."

d. An agreement to arbitrate any and all claims against Experian in the American Arbitration Association (AAA), including all claims resulting from incorrect credit reporting on Plaintiff's Experian credit report.

e. A bar on bringing class actions against Experian or functioning in the capacity of a class representative in cases against Experian.

f. Waiver of the constitutional right a trial by jury.

g. Limitations on how mass arbitrations can be conducted against Experian.

h. Plaintiff can obtain a new credit report every thirty days, which is less than the weekly credit report provided without any contractual restrictions on annual credit report.

i. Waiver of the UCC warranties of fitness for particular purpose and warranty of merchantability for the reports provided by Experian.

j. Waiver of any direct, indirect, incidental, special, consequential, or exemplary damages from mistakes on the credit reporting from Defendants.

117.   Had Plaintiff been informed by Defendants that the service was not actually "free" and that instead it required Plaintiff to give away important privacy and legal rights, he would not have entered into the agreement.

118.   Defendants did not explain to the unsophisticated Plaintiff that Experian's inclusion of an arbitration clause would take away his right to a jury trial for any issues that may arise on her Experian credit report.

119.   Defendants knew or should have known that they were deceiving consumers with the term "free" when it required consumers to provide significant consideration.

120.   The contract was unconscionable under all circumstances alleged at the time it was made and induced by unconscionable conduct, and therefore is unenforceable.

121.   The Defendants made the above representations and omissions to induce the Plaintiff into entering into this agreement.

122.   Plaintiff was damaged as a result and suffered, and continues to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## COUNT IV

### *UNCONSCIONABLE DELEGATION CLAUSE (CLASS CLAIM)*

123.     The Plaintiff and all others similarly situated incorporate the previous paragraphs as if fully set forth herein.

124.   Plaintiff and Defendants occupy dramatically unequal bargaining positions, including that:

a.Plaintiff is an unsophisticated consumer.

b.Defendant Experian is a large corporation that regularly solicits customers via national advertising campaigns to obtain and disseminate consumer information.

125.   The delegation clause within the arbitration contract were formed without a true meeting of the minds, caused by circumstances including:

a.Defendants misrepresented that Plaintiff was obtaining a "free" credit report;

b.Defendants misrepresented that Plaintiff was obtaining a "free" credit score;

c.Defendants failed to clearly disclose material terms and conditions on the same webpage required to obtain the allegedly "free" credit report;

d.Defendants did not disclose that a truly free credit report was available in another website that did not require the Plaintiff to enter into onerous contract terms such as granting access to personal information and waiving constitutional rights;

e.luring consumers to sister company websites for the purpose of allegedly receiving a free credit report to obtain rights over the consumer;

f.not ensuring that the consumer saw all relevant terms by requiring a scroll box or to scroll through the terms before clicking to obtain the "free" credit report and score; see *Sqouros v. TransUnion Corp*., 817 F.3d 1029, 1032-1036 (7th Cir. 2016);

    g. using the term "free" in violation of FTC rules regarding its use.

126.   Under the specific circumstances alleged, the delegation clause contains substantively unconscionable and commercially unreasonable terms, including:

    a. Agreeing to allow Defendants to keep copies of all credit information for Plaintiff.

    b. Agreeing to allow Defendants to provide Plaintiff's private credit information to third parties so that they can market products and services to Plaintiff.

    c. A statement that the terms of agreement for this allegedly free service may be "updated from time to time" and that "You should check this website regularly for updates to this Agreement."

    d. An agreement to arbitrate any and all claims against Experian in the American Arbitration Association (AAA), including all claims resulting from incorrect credit reporting on Plaintiff's Experian credit report.

    e. A bar on bringing class actions against Experian or functioning in the capacity of a class representative in cases against Experian.

    f. Waiver of the constitutional right a trial by jury.

    g. Limitations on how mass arbitrations can be conducted against Experian.

    h. Plaintiff can obtain a new credit report every thirty days, which is less than the weekly credit report provided without any contractual restrictions on annual credit report.

    i. Waiver of the UCC warranties of fitness for particular purpose and warranty of merchantability for the reports provided by Experian.

    j. Waiver of any direct, indirect, incidental, special, consequential, or exemplary damages from mistakes on the credit reporting from Defendants.

127.   Had Plaintiff been informed by Defendants that the service was not actually "free" and

that instead it required Plaintiff to give away important privacy and legal rights, he would

not have entered into the delegation clause contained within the agreement.

128.   Defendants did not explain to the unsophisticated Plaintiff that Experian's inclusion of

a delegation clause would take away his right to a jury trial for any issues that may arise

on her Experian credit report.

129.   Defendants knew or should have known that they were deceiving consumers with the

term "free" when it required consumers to provide significant consideration.

130.   The delegation clause was unconscionable under all circumstances alleged at the time

it was made and induced by unconscionable conduct, and therefore is unenforceable.

131.   The Defendants made the above representations and omissions to induce the Plaintiff

into entering into this agreement.

132.   Plaintiff was damaged as a result and suffered, and continue to suffer, significant

emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

## COUNT V

## JOINT VENTURE (CLASS CLAIM)

133.      Plaintiff and and all others similarly situated incorporate the preceeding

paragraphs as if stated herein.

134.      The Defendants have a common interest; that is, ConsumerInfo.com and Experian

have a common desire to profit from the credit reports that Experian generates and they

have a common desire to create liability protections for Experian through arbitration and

class action waivers.

135.      Experian did not directly communicate with the Plaintiff or the class in this

process but instead relied on ConsumerInfo.com to manage it's websites and

communicate with the consumer and provide Experian's bait and  "free" offers.

136.      The point of the enterprise was for all of the Defendants to enrich the other at the

expense of the Plaintiff and the class.

137.      Both of the Defendants have joint control and venture.

138.      Both of the Defendants had a joint proprietary interest in getting the Plaintiff and

the class to enroll in the .

139.      Both of the Defendants shared in the profits of the joint venture.

140.   Plaintiff was financially damaged as a result of the Defendants' joint venture and

suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern,

worry, indignation, out of pocket loss, credit degradation, and other harm.


**DEMAND FOR RELIEF**

Plaintiff and all others similarly situated demand from the Defendant:

a.  Actual damages for Defendants' violations of all counts.

b.  Punitive damages for Defendants' violations of Counts II, III, and V.

c.  Injunctive relief that the Defendants cease and desist using the term "free" to market its

products after six months of continuous use as required by 16 CFR § 251.1 (h).

d.  Injunctive relief that the Defendants fully disclose all material terms and conditions at the

outset of the "Free" offer as required by 16 CFR § 251.1 (c).

e.  Statutory damages for all willful violations of the Fair Credit Reporting Act as allowed

by  15 U.S.C. § 1681n.

f.  Actual damages for all negligent violations of the Fair Credit Reporing Act as allowed by

15 U.S.C. § 1681o.

g.  Attorney's fees and costs as allowed for by 15 U.S.C. § 1681o and 15 U.S.C. § 1681n.

h.  Disgorgement of illgotten funds.

i.  Such other relief as the Court shall deem just and proper under the attendant

circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

**JOE COX, ON BEHALF
OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED,**
BY COUNSEL

BY:   /s/ Benjamin M. Sheridan
Benjamin M. Sheridan (# 11296)
Jed R. Nolan (#10833)

Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111
Fax: (304) 562-7115
ben@kleinsheridan.com
jed@kleinsheridan.com

Jonathan R. Marshall (WVSB #10580)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
jmarshall@baileyglasser.com
(304) 345-6555

Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Rd.
Suite 300
Cherry Hill, NJ 08002
pkipnis@baileyglasser.com
(304) 345-6555

*Counsel for Plaintiff*