**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**Joe Cox,** on behalf of himself
and all others similarly situated,

Plaintiff,

v. Civil Action Number 3:24-cv-00033

**ConsumerInfo.com, Inc., d/b/a Experian,**
**Experian Information Solutions, Inc., d/b/a**
**Experian,**

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**Table of Contents**

**Page(s)**

I. Introduction and Background ........ 1

A. Defendants' Bait-and-Switch Scheme ........ 1

B. The FTC's Regulation of the Term "Free" ........ 2

C. Plaintiff Files this Suit on Behalf of a National Class of Consumers ........ 4

D. The Arbitration Clause Is Void Because the Entire Agreement is Unenforceable Due to an Absence of a "Meeting of the Minds" Among the Parties; For the Same Reasons, the Arbitration Contract and Delegation Clause are Unenforceable as Unconscionable ........ 4

II. Legal Standards ........ 6

III. Argument ........ 8

A. Defendants' Motion First Presents an Issue of Assent to Arbitration for this Court to Decide ........ 8

B. Plaintiff Did Not Assent to the Contract, Including the Arbitration Agreement, Because Defendants Misrepresented and Deceived Plaintiff in Numerous Material Respects in the Contract Formation Process ........ 10

1. Contracts require mutuality of assent. ........ 10

2. The FTC has long regulated the term "free" ........ 10

3. Defendants' conduct precluded mutuality of assent in the contract formation process ........ 13

C. The Arbitration Clause is Also Unenforceable as Unconscionable ........ 16

IV. Conclusion ........ 18

# Table of Authorities

**Page(s)**

**Cases**


*Am. States Ins. Co. v. Surbaugh*,
231 W. Va. 288, 745 S.E.2d 179 (2013)....................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................7

*Berkeley Cty. School Dist. v. Hub Int'l Ltd.*,
944 F.3d 225 (4th Cir. 2019)....................9

*Bouchat v. Balt. Ravens Football Club, Inc.*,
346 F.3d 514 (4th Cir. 2003)....................7

*Brown v. Genesis Healthcare Corp.*,
229 W.Va. 382, 729 S.E.2d 217 (2012)....................5, 6, 17

*Carson v. Giant Food, Inc.*,
175 F.3d 325 (4th Cir. 1999)....................6

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................8

*FTC v. Commerce Planet, Inc.*,
878 F. Supp. 2d 1048 (C.D. Cal. 2012)....................11

*FTC v. John Beck Amazing Profits, LLC*,
865 F. Supp. 2d 1052 (C.D. Cal. 2012)....................11

*FTC v. Kennedy*,
574 F. Supp. 2d 714 (S.D. Tex. 2008)....................11

*FTC v. One Techs., LP*,
No. 3:14-cv-05066-JSC, 2014 BL 328635 (N.D. Cal. 2014)....................11

*Galloway v. Santander Consumer USA, Inc.*,
819 F.3d 79 (4th Cir. 2016)....................7

*Gooch v. Cebridge Acquisition LLC*,
No. 2:22-cv-00184, 2023 WL 415984 (S.D. W.Va. Jan. 25, 2023)....................5, 10, 17, 18

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
561 U.S. 287 (2010)....................7

*Henry Schein, Inc. v. Archer & White Sales, Inc*,
139 S.Ct. 524, 527-30 (2019)....................9

*Luskin's, Inc. v. Consumer Protection Division*,
353 Md. 335 (1999) ....................13

*Messer v. Huntington Anesthesia Grp., Inc.*,
222 W. Va. 410, 664 S.E.2d 751 (2008)....................8

*Mey v. DIRECTV LLC*,
No. 5:17-cv-179, 2021 WL 973454 (N.D. W.Va. Feb. 12, 2021)....................6, 17

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................7

*O'Neil v. Hilton Head Hosp.*,
115 F.3d 272 (4th Cir. 1997) ....................6

*Raymond James Fin. Servs. v. Cary*,
709 F.3d 382 (4th Cir. 2013) ....................6

*Rowland v. Sandy Morris Fin & Estate Planning Serv., LLC*,
993 F.3d 253 (4th Cir. 2021) ....................4, 5, 6, 7

*Schumacher Homes of Circleville Inc. v. Spencer*,
237 W.Va. 379, 787 S.E.2d 650 (2016)....................17

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)....................7

*Ways v. Imation Enter. Corp.*,
214 W. Va. 305, 589 S.E.2d 36 (2003)....................8

**Statutes**

United States Code, Title 9 § 2 ....................6

United States Code, Title 15 §1681j(a)....................1

Consumer Protection Act....................13

Federal Abitration Act ....................7

Fair Credit Reporting Act ....................4

Federal Antitrust Law § 55.1 ....................12

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ....................6

Federal Trade Comission Act section 5 ....................13

Public Law 108-159, 117 Stat. 1952 ....................1

Uniform Comercial Code ....................18

**Regulatory Materials**

*Book-of-the-Month Club, Inc*.,
48 F.T.C. 1297 (1952), *aff'd*, 202 F.2d 486 (2d Cir.) *cert. denied* 346 U.S. 883 (1953) ....................12

*FTC v. Direct Connection Consulting, Inc*.,
No.:1-08-cv-1739 (Dkt. No. 123) (N.D. Ga. Mar. 23, 2009) ....................11

*In re Intuit, Inc*.,
2023 WL 5277857, *In re Intuit, Inc*., FTC Docket 9408, *Intuit Inc., In the Matter of (TurboTax)* | Federal Trade Commission (ftc.gov) (2023). ....................11

*In re Samuel Stores, Inc*.,
27 F.T.C. 882 (1938) ....................11, 12

*In re Teleline, Inc., FTC*
1991 WL 639915, File No. 892-3229 (Apr. 3, 1991) ....................11

**Other Authorities**

Code of Federal Regulations, Title 16 § 251.1.(a)(1) ....................12

Code of Federal Regulations, Title 16 § 251.1(c) ....................12, 16

Code of Federal Regulations, Title 16 § 251.1(h) ....................13

Code of Federal Regulations, Title 16 § 251.1 ....................12

***"The best things in life are free."***
***~The Beatles***

## I. Introduction and Background

Although they would understandably prefer that the Court simply adopt the views of the inapposite decisions turning on inapplicable clickwrap and delegation arbitration principles and refer this case to an arbitrator out of the gate, Defendants' motion to compel arbitration (ECF No. 11) cannot be viewed in a vacuum but instead as part of the Action Plaintiff has filed on behalf of a nationwide class of consumers, which arises from the following set of facts.

### A. ***Defendants' Bait-and-Switch Scheme***

As a consumer reporting agency (CRA) regulated by the FTC (and CFPB), Defendant Experian is required to create and offer a website by which consumers may request their ***free*** credit report. *See* Compl. (ECF No. 1) ¶¶ 23-24. Along with the other national CRAs, Experian used the domain www.AnnualCreditReport.com to offer consumers the free annual credit reports required by 15 U.S.C. §1681j(a); Pub.L. 108-159, 117 Stat. 1952. *Id.* at ¶ 25. However, Experian also launched and marketed a parallel, alternative website, www.FreeCreditReport.com, the original version of CreditWorks, by ConsumerInfo.com, Inc. *Id.* at ¶ 26. Experian marketed this alternative website in a way that distracted from the initial website mandated by statute and nefariously found a way to charge consumers for what should be a truly "free" product. Experian did so by inducing consumers to use this alternative website instead of the truly "free" website which provided the free credit reports required by federal regulation, and in turn coercing consumers to bind themselves to a myriad of unconscionable terms and conditions. *Id.* at ¶¶ 29-32.

These terms and conditions included, among other things: giving written permission for Defendants to access consumers' credit reports and actually ***sell their private consumer information to third parties for profit***; agreeing to allow Defendants to keep copies of all credit

information; an "agreement" to arbitrate any and all claims against Experian in the American Arbitration Association (AAA), including all claims resulting from incorrect credit reporting on the consumer's Experian credit report; class and mass action bans; limitations on the number of credit reports the consumer could obtain; waiver of the UCC warranties of fitness for particular purpose and warranty of merchantability for the reports provided by Experian; and waiver of damages for mistakes on the credit reporting. *Id.* at ¶¶ 33-34. Despite that Defendants are not entitled under federal law to access a consumer's information without a permissible purpose, and that consumer information and data are valuable commodities that rightfully belong to the consumer, Defendants induce consumers to agree and consent to allow Experian to market and sell their personal information to third parties via this "free" website without any warning. *Id.* at ¶¶ 35-39. Defendants' development, promotion, and inducement of consumers to this alternative website has already been the subject of both FTC and CFPB enforcement actions, *id.* at ¶¶ 27-28, but Defendants have remained undeterred in their promotion of this "free credit report" model.

**B. *The FTC's Regulation of the Term "Free"***

The term "free" is a special term of art in commerce and has been particularly defined and regulated by the FTC to require that all offers of "free" merchandise be made with "extreme care so as to avoid any possibility that consumers will be misled or deceived." Compl. ¶ 47. Furthering this objective, the FTC requires all material terms to be displayed conspicuously next to the use of the term "free". *Id.* at ¶ 49. This did not happen here; instead, a user must click through three levels of links to even reach a "Terms of Agreement." Compl. ¶ 54. The only option to obtain a credit report on the Experian website included having to agree to these terms of service. *Id.* ¶ 21. However, there was no disclosure next to the word "free" on www.FreeCreditReport.com revealing that the consumer's private financial information would be used for advertising purposes

or sold to third parties; Defendants therefore failed to disclose all of the relevant terms and conditions they were required to disclose *as required by FTC rules*. Compl. ¶¶ 49-59. As such, there was no "meeting of the minds" between the parties to form any agreement – not for Defendants to obtain Plaintiff's credit report, ***arbitrate any subsequent dispute, or to delegate to the arbiter***. Compl. ¶¶ 70-78. The FTC also places material temporal restrictions on the use of the term "free" which Defendants violated in the contract formation process here. *Id.* at ¶¶ 50, 53.

Further, assuming, *arguendo*, that the Court is persuaded that there is a contract, both common sense and FTC Free Guides dictate that the contract is merely for the material terms listed next to the term free and does not include any of the terms in the Defendants' terms of service. Defendants' allegedly "free" product has sixteen pages of single-spaced terms and conditions allegedly attached to it. A consumer who is being told by a CRA regulated by the FTC that he or she is receiving a product for "free" would not and should not feel obligated to dig into a separate sixteen-page document of dense legal jargon packed with hidden terms. This is the very crux of the Defendants' bait-and-switch scheme. They are abusing the term "free" to induce consumers to sign up for a decidedly not free service and using means and methods that the FTC has proscribed for over 50 years to do it. Defendants are doing so with the intent that consumers will enable Defendants to have free rein to sell the consumers' private financial information to the highest bidder, be compelled to arbitration if they have any objection to their Experian credit report, and be forced to use the forum of the Defendants' choice, the AAA, as their sole remedy.[1] Crucially, Defendants' "contract" is doing all this without disclosing ANY of these essential terms at the outset prior to providing the now costly "free" credit report. This is the lens through which *none*

[1] The American Arbitration Association is, of the two major forums accepting consumer cases, AAA and JAMS, the only one allowing no discovery and no strikes of potential arbiters. This massive limitation on a consumer's rights to vindicate their FCRA claims in court should there be errors on their Experian credit report is another material term that should be disclosed clearly next to the word "Free," as expected by the FTC.

of the prior cases have examined the facts, and it is precisely the lens through which Plaintiff asks this Court to examine the facts.

**C. *Plaintiff Files this Suit on Behalf of a National Class of Consumers***

For all these reasons and those set forth in greater detail in the Complaint, Plaintiff Joe Cox brings claims on behalf of a national class of consumers who responded to Experian's internet advertisement for a free credit report by enrolling in freecreditreport.com within the applicable statute of limitations for claims under the Fair Credit Reporting Act (FCRA) as well as for unjust enrichment, unconscionable contract, unconscionable delegation clause and joint venture arising from Defendants' scheme of baiting and switching consumers into providing so-called "written permission" to access their credit reports through the use of the term "free".

Specifically with respect to the arbitration agreement, Plaintiff alleges that the arbitration contract is unconscionable because it was "formed without a true meeting of the minds" and was rife with material misrepresentation and deception at the formation stage, such that Plaintiff did not assent to its terms. Compl. at ¶¶ 113-132. It is black letter law that if there is no meeting of the minds at the contract formation stage, then any arbitration clause within the contract likewise is void. *Rowland v. Sandy Morris Fin & Estate Planning Serv., LLC*, 993 F.3d 253, 258 (4th Cir. 2021).

**D. *The Arbitration Clause Is Void Because the Entire Agreement is Unenforceable Due to an Absence of a "Meeting of the Minds" Among the Parties; For the Same Reasons, the Arbitration Contract and Delegation Clause are Unenforceable as Unconscionable***

In their motion to compel arbitration, Defendants purposely ignore Plaintiff's entire theory of the case and essentially argue that the Court need look no further than the arbitration agreement and the cases in Defendants' string cites, none of which set forth Plaintiff's particular theory of unconscionable contract or delegation clause. Defendants' motion is essentially a list of extra-

jurisdictional cases finding that consumers are bound by their arbitration agreements with Experian when they attempt to escape those agreements by arguing they did not assent to the terms by *clicking* on them via Experian's webform, or that the arbitration agreement was not delegated to the arbitrator.[2]

But Plaintiff here does not argue these positions as they have been asserted before, as a plain reading of his claims makes clear. Plaintiff's position is better understood through his claims of unconscionable contract and delegation clause, as well as through the simple blueprint set forth by the Fourth Circuit in *Rowland v. Sandy Morris Fin & Estate Planning Serv., LLC*, 993 F.3d 253 (4th Cir. 2021). There, the Court explained that when there is no "meeting of the minds" between the parties with respect to the larger agreement, the arbitration clause within that agreement is unenforceable. Such is the case here, where Plaintiff has alleged there was no meeting of the minds between the parties because Defendants deceptively misled Plaintiff and class members by false promises to provide consumer reporting products for "free," all the while failing to disclose material terms and conditions, including the arbitration clause and acquisition and sale of personal information, that was in fact costly to consumers.

Moreover, "[t]he FFA does not require arbitration when, under generally applicable principles of state law, the agreement would be unenforceable." *Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984 (S.D. W.Va. Jan. 25, 2023). Under West Virginia law, unconscionability provides a defense against enforcement of a contract. Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"). Whether a

[2] The breadth of Defendants' arbitration agreements which have survived these other challenges might be viewed another way: as Judge Bailey recognized, such "infinite arbitration clauses" are really "less a contractual provision and more a kind of arbitration servitude." *Mey*, at *2

contract is unconscionable is an issue to be decided by the Court. *Mey v. DIRECTV LLC*, No. 5:17-cv-179, 2021 WL 973454, at *5 (N.D. W.Va. Feb. 12, 2021), citing Sy. Pt. 7, *Brown II.*

Plaintiff has alleged that Defendants' arbitration agreement is unconscionable and unenforceable for a host of reasons set forth above and in the Complaint, including its litany of unconscionable terms and its inducement by unconscionable conduct. Compl. ¶¶ 116-121. For this additional reason, the Court can and should refuse to enforce the Agreement.

Defendants' motion to compel arbitration must therefore be denied.

## II. Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, renders enforceable written arbitration contracts, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA represents 'a liberal federal policy favoring arbitration agreements.'" *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir. 1997) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Generally, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). However, "[t]he presumption ... applies only when 'a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand,' not when there remains a question as to whether an agreement even exists between the parties in the first place." *Raymond James Fin. Servs. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) (quoting *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 301 (2010)). In other words, neither the FAA nor its accompanying presumption favoring arbitration implies that courts should "grant blindly all motions to compel arbitration." *Rowland*, 993 F.3d at 257. Importantly, "[t]here is a difference between disputes over arbitrability and disputes over contract formation." *Id.* at 258.

When parties disagree about the latter issue (i.e., whether they formed an agreement to arbitrate at all), "the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296; *see also Rowland* , 993 F.3d at 257 ("The FAA balances the goals of facilitating arbitration with the aims of contract law by recognizing a limited role for federal courts to play."). Courts thus carry out "an important [pre-arbitration] function," *Rowland*, 993 F.3d at 258, in "decid[ing] the threshold issue of contract formation. . . [and] permitt[ing arbitration] only when the parties [have] agree[d] to it," *id.* The foregoing framework, as contemplated by the FAA, "respects party autonomy and the general principles of contract law." *Id.*

In considering a motion to compel arbitration, the Court applies the same standard as a motion for summary judgment. *See Rowland*, 993 F.2d at 258. Thus, under the FAA, the party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Further, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The FAA was intended "to make arbitration agreements as enforceable as other contracts, but not more so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (emphasis added) (internal quotation marks omitted); accord *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) ("a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation.") Thus, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. The Court applies West Virginia contract law principles to determine

whether there is an enforceable contract. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (stating, "courts generally ... should apply ordinary state-law principles that govern the formation of [arbitration agreements]"). Under West Virginia law, "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. pt. 9, *Ways v. Imation Enter. Corp.*, 214 W. Va. 305, 308, 589 S.E.2d 36, 39 (2003). "The contractual concept of 'mutual assent' or 'meeting of the minds' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008). In order for there to be mutual assent, there must be an offer by one party and an acceptance on another. *Ways*, 214 W. Va. at 313, 589 S.E.2d at 44. "Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement ...." *Id.* (quoting *Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140–41, 437 S.E.2d 448, 450–51 (1993)) (citations omitted).

## III. Argument

### *A. Defendants' Motion First Presents an Issue of Assent to Arbitration for this Court to Decide*

Defendants contend that this dispute must be decided by an arbitrator because Plaintiff's claims fall within the scope of the Arbitration Agreement. Putting aside for the moment that West Virginia law reserves unconscionability as a matter for the courts, *see* discussion *infra*, Plaintiff acknowledges that the delegation clause in the contract portends to delegate issues of enforcement and unconscionability to the arbitrator. ECF No. 11-2. But there can be no dispute that the arbitration clause cannot itself usurp the role of this Court to decide issues of *formation*, and Plaintiff alleges that there was no meeting of the minds and therefore no agreement to arbitrate

here because the underlying contract was unconscionable and there was no meeting of the minds in the formation process. Compl. at ¶¶ 75-78.

Defendants nevertheless rely on *Henry Schein, Inc. v. Archer & White Sales, Inc*, for its holding that, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." 139 S.Ct. 524, 527-30 (2019). But the *Henry Schein* Court also recognized the long-held first principle that, "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.* at 530. In other words, "provisions requiring the arbitration of arbitrability questions do not, however, undermine § 4 of Title 9 and preclude a court from deciding that a party never made an agreement to arbitrate *any* issue (which would necessarily encompass an arbitrability issue.)" *Berkeley Cty. School Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 fn. 9 (4th Cir. 2019).

This is precisely what happened here. By misleading and deceiving Plaintiff and putative class members in the contract formation process by hiding the material terms (discussed in Section II, *infra*), Defendants ensured that there would be no meeting of the minds with respect to the terms and conditions being offered and "agreed to" as part of this process, including but not limited to: giving written permission for Defendants to access consumers' credit reports and actually sell their private consumer information to third parties for profit; agreeing to allow Defendants to keep copies of all credit information; an "agreement" to arbitrate any and all claims against Experian in the American Arbitration Association (AAA), including all claims resulting from incorrect credit reporting on the consumer's Experian credit report; class and mass action bans; limitations on the number of credit reports the consumer could obtain; waiver of the UCC warranties of fitness for particular purpose and warranty of merchantability for the reports provided by Experian; and waiver of damages for mistakes on the credit reporting. Compl. at ¶¶ 33-34. Defendants' Motion

accordingly presents an issue of contract formation for the Court, not of delegation for the arbitrator.

### ***B. Plaintiff Did Not Assent to the Contract, Including the Arbitration Agreement, Because Defendants Misrepresented and Deceived Plaintiff in Numerous Material Respects in the Contract Formation Process***

#### **1. *Contracts require mutuality of assent.***

Plaintiff did not assent to the terms and conditions contained in the contract offered at www.FreeCreditReport.com because of Defendants' numerous misrepresentations and deceptions in the contract formation process and failure to adhere to the FTC regulations and Guidelines that govern "free" offers. Concerning mutual assent to contract, the West Virginia Supreme Court of Appeals holds:

> It is elementary that mutuality of assent is an essential element of all contracts. In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied.

*Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984, at *7 (S.D. W.Va. Jan. 25, 2023), quoting *Bailey v. Sewell Coal Co.*, 437 S.E.2d 448, 450-51 (W. Va. 1993) (internal citations omitted).

#### **2. *The FTC has long regulated the term "free"***

The regulations and Guidelines Plaintiff relies on here to support his view of the parties' failure to reach an agreement are nothing new but have been developed and enforced by the Federal Trade Commission due to a long-recognized problem in the consumer advertising space. Indeed, the FTC understands that consumers are drawn to offers of "free" goods and that the term therefore requires particularized attention. As early as 1938, the Commission was confronted with whether

a retailer who advertised a special as "FREE! Choice of $6.95 dress or men's shoes with any $25.00 purchase!" was deceptive; since the advertisement clearly disclosed the conditions of the offer and the other merchandise was sold at the same standardized markup both before and after the special offer, the Commission dismissed the complaint.[3] Much more recently, in 2023, the Commission has grappled with TurboTax's deceptive use of the word "free" in its advertisements to describe its products, despite the free offer applying to only about one-third of tax filers – and that consumers do not find out whether they qualify for free filing until after they have shared their personal information and paid a fee.[4]

Whether a consumer service or good is truly "free" is thus a heavily regulated and litigated area, with strict FTC regulations and guidelines surrounding the use of the term, and Plaintiff's confusion at Defendants' bait and switch conduct is not uncommon.[5] Use of the word "free" comprises a distinct category of the Federal Trade Commission's oversight of advertising for two

---

[3] *In re Samuel Stores, Inc.*, 27 F.T.C. 882 (1938).

[4] *See In re Intuit, Inc.*, FTC Docket 9408, *Intuit Inc., In the Matter of (TurboTax)* | Federal Trade Commission (ftc.gov) (2023).

[5] *See, e.g., FTC v. One Techs., LP*, No. 3:14-cv-05066-JSC, 2014 BL 328635, at *4–5 (N.D. Cal. 2014) (enforcing settlement, requiring defendants to pay $22 million in consumer redress; defendants had offered consumers "free" access to credit scores, but then charged monthly recurring fee for credit monitoring); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1063 (C.D. Cal. 2012) (finding defendants' landing and billing pages deceptive; net effect created was that product was free offer, except for shipping and handling fee, and although there was disclosure of negative option plan, consumers were unlikely to see or understand it because of its placement on pages); *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1076 (C.D. Cal. 2012) (finding that infomercials failed to adequately disclose that free product was actually continuity plan which, upon expiration of free trial period, charged consumers $39.95 per month unless they took affirmative step of cancelling their memberships); *In re Teleline, Inc.*, 1991 WL 639915, FTC File No. 892-3229 (Apr. 3, 1991) (misrepresentation that callers would receive premium or free item by making single call) (proposed consent order). *See also FTC v. Direct Connection Consulting, Inc.*, No.:1-08-cv-1739 (N.D. Ga. Mar. 23, 2009) (Dkt. No. 123) (finding violation of Telemarketing Sales Rule, for falsely pitching free products that were never delivered and instead charging consumers) (consent order); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719–22 (S.D. Tex. 2008) (finding misrepresentation where call operators immediately charged customers' phone bills for web services, after stating that they would only be charged if they expressly authorized continued web access after "free trial" period).

reasons.[6] First, "free" itself is a "dynamic word with a special psychological appeal," as "[f]ew other words in bold print or in a headline catch the reader's eye as effectively." The FTC has variously described "free" as a "powerful psychological magnet[7] and the "lure which draws the best of us against our will 'to get something for nothing'."[8] Second, the Commission receives a large number of consumer complaints regarding dishonest or deceptive uses of "free." *Id.*

The term "free" thus has special meaning in commerce and has been defined by the Federal Trade Commission (FTC) in 16 CFR § 251.1 to include the requirement that all free offers "must be made with ***extreme care so as to avoid any possibility that consumers will be misled or deceived***." 16 C.F.R. § 251.1.(a)(1) (emphasis added). As a result of this special importance of the term "free" in the marketplace, the FTC places the following restrictions on its usage, the first of which is a disclosure requirement:

> **(c) *Disclosure of conditions.* When making "Free" or similar offers all the terms, conditions and obligations upon which receipt and retention of the "Free" item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.** Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of "Free" merchandise or service. **For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset**…

16 C.F.R. § 251.1(c) (emphasis added).

The FTC places an additional limitation on the use of the word "Free" in advertising, explicitly limiting its usage to no more than six months in a twelve-month period:

[6] 7 Fed. Antitrust Law § 55.1.

[7] *In re Samuel Stores, Inc.*, 27 F.T.C. 882, 887 (1938).

[8] *Book-of-the-Month Club, Inc.*, 48 F.T.C. 1297, 1312 (1952), *aff'd*, 202 F.2d 486 (2d Cir.) *cert. denied* 346 U.S. 883, (1953), order modified, 50 F.T.C. 778 (1954).

> **(h) Frequency of offers. So that a "Free" offer will be special and meaningful, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for more than 6 months in any 12-month period.** At least 30 days should elapse before another such offer is promoted in the same trade area. No more than three such offers should be made in the same area in any 12-month period. In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed 50 percent of the total volume of his sales of the product, in the same size, in the area.

16 C.F.R. § 251.1(h) (emphasis added).

Courts recognize that these Guidelines are instructive with respect to whether Defendants' conduct was misleading and deceptive. For example, in *Luskin's, Inc. v. Consumer Protection Division*, 353 Md. 335 (1999), the Court of Appeals of Maryland held that a claim under that state's Consumer Protection Act that an advertisement is deceptive because of its use of the word "free," or its equivalent, ordinarily should be decided by applying the same principles and rules that are applied by the FTC and the federal courts under section 5 of the FTC Act, "including the principles and rules in the Free Guidelines." *See Luskin's*, 353 Md. at 364.

**3. *Defendants' conduct precluded mutuality of assent in the contract formation process***

Defendants here flagrantly violated both of these proscriptions in its offer of the alternative website, www.FreeCreditReport.com to Plaintiff and other consumers. First, they did not "clearly and conspicuously" set forth all of the terms and conditions in conjunction with the offer of the purportedly "Free" offer to obtain Plaintiff's credit report. Rather, they *omitted* several material terms next to the offer, including that the consumer's private financial information would be used for advertising purposes or sold to third parties and that the consumer was signing up for arbitration with Experian. Compl. ¶¶ 75-77. And, in direct contravention of the Guidelines, a user must click through three levels of links to even reach they "Terms of Agreement." Compl. ¶ 54.

In addition, Defendants violated Section (h) of the Guideline in that they continued to offer the credit service past six months. Compl. ¶ 102. This is relevant because the Defendant has created a confusing alternative site www.freecreditreport.com which purports to be free, but is in direct competition with the statutorily-required website www.annualcreditreport.com, which is, in fact, free. The existence of Defendant's continuous free site that is actively promoted on search engines means that individuals who may have been searching for annualcreditreport.com are lured into thinking they found the "correct" free site.

Defendants have been on notice that their conduct with respect to their "free credit report" model is deceptive because it distracts from the actual free credit report site mandated by federal statute for the purpose of protecting consumers. Instead, Defendants actually charge consumers for its falsely-labeled "free" product. Compl. ¶ 26. Experian has been subject to charges from the FTC (now settled) as well as an enforcement action from the CFPB whereby Defendant had to submit to another consent order and pay restitution. Compl. ¶ 28. These facts support a finding that Defendants know and intended their conduct in the formation process to be deceptive.

Plaintiff also did not assent to the contract because Defendants misrepresented and deceived Plaintiff in numerous respects as to material terms of the Agreement by the overall bait-and-switch scheme itself, and specifically through Defendants' misrepresentation that Plaintiff was obtaining a "free" credit report; misrepresentation that Plaintiff was obtaining a "free" credit score; failed to disclose material terms and conditions on the same webpage required to obtain the allegedly "free" credit report; Defendants did not disclose that a truly free credit report was available in another website that did not require the Plaintiff to enter into onerous contract terms such as granting access to personal information and waiving constitutional rights; luring consumers to sister company websites for the purpose of allegedly receiving a free credit report to

obtain rights over the consumer; not ensuring that the consumer saw all relevant terms by requiring a scroll box or to scroll through the terms before clicking to obtain the "free" credit report and score; using the term "free" in violation of FTC rules regarding its use. Compl. ¶ 115.

Plaintiff was entitled to rely on Defendants' representations and was under no obligation to search for additional terms, obligations, or conditions that were not placed conspicuously near the first advertisement for Defendants' allegedly "Free" credit report service. Plaintiff was simply trying to sign up for a free – truly FREE – credit report service, to which he is entitled under federal law, and ended up bound to a myriad of onerous terms and conditions, including his private financial information sold and being subjected to unsolicited advertisements and now potentially forced arbitration of his claims.

Defendants are profiting off the term "free" in several respects here – by luring consumers away from the truly "free" website they are required to offer towards the website that provides Defendants themselves a myriad of benefits at consumers' expense. Defendants know that the term "free" can dupe consumers into signing up for liability waivers, arbitration clauses, class action bans, and other losses of rights to protect themselves against claims regarding credit reports that the Defendants also make and profits from the sale and usage of. *See* Compl. ¶ 62.

Defendants self-servingly contend that Plaintiff is bound to arbitrate his claims with Defendants because he clicked on a link. Some courts have been swayed by these simple arguments of assent and browsewrap/clickwrap arguments made by these Defendants and others binding consumers to arbitration agreements behind browsewrap and clickwrap links. Sometimes these browsewrap/clickwrap arguments truly are so simple and do not raise formation arguments involving consumer rights and federal regulations and Guidelines that lie at the heart of this

dispute. However, none of the cases cited by Defendant deal with the bait-and-switch nature of Defendant's use of the term free in the orders or briefing.

But again, simply binding consumers to a browsewrap/clickwrap agreement is not what these Defendants did. These Defendants ignored the clear regulations and Guidelines of the Federal Trade Commission, informed by decades of policies surrounding the loaded term "free" and intended to protect consumers, and hid material terms and conditions from Plaintiff and putative class members. In doing so, Defendants ensured that Plaintiff could not knowingly assent to the terms of the contract because they were not provided to him in the manner that the FTC required they be provided: that is, "clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 C.F.R. § 251.1(c).[9] Defendants portended to know better than the FTC and to thereby strip Plaintiff and the class of consumers he seeks to represent of the rights they ostensibly gave away in the hidden contract that the protections afforded them by the FTC Guidelines.

Defendants' conduct in engaging in a flagrant bait-and-switch scheme, hiding material terms, and violating FTC regulations and Guidelines in the offer-and-acceptance process with Plaintiff resulted in an absence of any meeting of the minds among the parties here. Accordingly, Defendants' motion must be denied.

### C. ***The Arbitration Clause is Also Unenforceable as Unconscionable***

The Court can and should also refuse to enforce the arbitration clause, including the delegation provision, as unconscionable. This Court and the Northern District of West Virginia routinely examine arbitration agreements under West Virginia contract law principles to determine

[9] While West Virginia recognizes that parties have a duty to read contracts, *Am. States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 298–99, 745 S.E.2d 179, 189–90 (2013), West Virginia also refuses to enforce deceptive and misleading conduct. *Id.* Without the disclosure of all terms alongside the term 'free' as required by 16 C.F.R. § 251.1(c), Experian has engaged in deceptive and misleading conduct that precludes contractual meeting of the minds.

whether they are enforceable, as "[t]he FFA does not require arbitration when, under generally applicable principles of state law, the agreement would be unenforceable." *Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984, at *11 (S.D. W.Va. Jan. 25, 2023) (on appeal (4th Cir 23-1142)) (citing cases). Under West Virginia law, unconscionability provides a defense against enforcement of a contract. Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"). Whether a contract is unconscionable is an issue to be decided by the Court. *Mey v. DIRECTV LLC*, No. 5:17-cv-179, 2021 WL 973454, at *5 (N.D. W.Va. Feb. 12, 2021), citing Sy. Pt. 7, *Brown II.*

With respect to the delegation issue, Plaintiff acknowledges that West Virginia law requires a delegation provision of an arbitration agreement to be enforced – ***unless specifically challenged***. Syl. Pt. 1, *Schumacher Homes of Circleville Inc. v. Spencer*, 237 W.Va. 379, 787 S.E.2d 650 (2016). Notably, Plaintiff has specifically challenged the delegation clause and disputed its validity in Count IV of the Complaint, and therefore met this procedural hurdle. The delegation provision is unconscionable and unenforceable because Plaintiff and Defendants occupy dramatically unequal bargaining positions in that Plaintiff is an unsophisticated consumer and Experian a large corporation that regularly solicits customers through its national advertising campaigns to obtain and disseminate consumer information. Compl. ¶ 124. The delegation clause contains numerous substantively unconscionable and commercially unreasonable terms and was induced by unconscionable conduct, just as the overall arbitration agreement was. Compl. ¶¶ 123-132.

With respect to the overall arbitration agreement, Plaintiff has alleged that Defendants' arbitration agreement is unconscionable and unenforceable for a host of reasons set forth in the Complaint, including its litany of unconscionable terms and its inducement by unconscionable conduct. Compl. ¶¶ 116-121. Specifically, the contract contacts substantively unconscionable and

commercially unreasonable terms including: agreeing to allow Defendants to keep copies of all credit information for Plaintiff; agreeing to allow Defendants to provide Plaintiff's private credit information to third parties so that they can market products and services to Plaintiff; unilateral updates to the Agreement; arbitration agreement; class action bar; waiver of jury trial; mass arbitration limitations; limitations on new credit reports; and waiver of UCC warranties and damages.

Plaintiff was unconscionably induced to enter into the overall Agreement and the arbitration agreement by Defendants' procedurally unconscionable methods, including the material misrepresentations and deceptions as to the term "free," and the lack of explanations as to the arbitration agreement. Compl. ¶¶ 117-121.

Considering all these factors and particularly the bait-and-switch scheme that led to Plaintiff entering into this unconscionable contract, the Court should find the arbitration agreement unenforceable as procedurally and substantially unconscionable. *See, e.g., Gooch,* at *21 (applying a "sliding scale" to determine unconscionability under West Virginia law). Defendants' Motion should be denied for this additional reason.

## IV. Conclusion

For all the foregoing reasons, Defendants' motion to compel arbitration should be denied.

Dated: March 14, 2024.

*<u>/s/ Patricia M. Kipnis</u>*
Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Rd.
Suite 300
Cherry Hill, NJ 08002
(215) 274-9420
pkipnis@baileyglasser.com

Jonathan R. Marshall (WVSB #10580)
Bailey & Glasser LLP

209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jmarshall@baileyglasser.com

Benjamin M. Sheridan (WVSB #11296)
Jed R. Nolan (WVSB #10833)
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111
Fax: (304) 562-7115
ben@kleinsheridan.com
jed@kleinsheridan.com

Susan Mary Rotkis (*pro hac vice*)
Consumer Attorneys
2290 East Speedway Boulevard
Tucson, AZ 85719
(602) 807-1504
srotkins@consumerattorneys.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of March, 2024, the foregoing was electronically filed and served through the Court's CM/ECF system to all counsel of record.

*/s/ Patricia M. Kipnis*
Patricia M. Kipnis